UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN LAMAR SMITH SR.,

    Plaintiff,                                           Civil Action No. 18-CV-13501

vs.                                                    HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING FOR FURTHER PROCEEDINGS**

        This matter is presently before the Court on cross motions for summary judgment [docket entries 17 and 18]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

        Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying his application for social security disability benefits. An Administrative Law Judge ("ALJ") held a hearing in October 2017 (Tr. 41-72) and issued a decision denying benefits in February 2018 (Tr. 8-25). This became defendant's final decision in September 2018 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

        Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by
> substantial evidence and the Commissioner employed the proper
> legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g));
> *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's decision, plaintiff was forth-five years old (Tr. 23). He has a college education and work experience as a recycler (Tr. 46, 65). Plaintiff claims he has been disabled since December 2014 (Tr. 155), when he was involved in a rollover automobile accident (Tr. 268), due to back injury, neck injury, shoulder injury, high blood pressure, depression, blurry vision, headaches, TMJ, dizziness, and mental trauma (Tr. 158).

The ALJ found that plaintiff's severe impairments are "residuals of a motor vehicle accident ('MVA'); degenerative disc disease of the spine with cervical disc bulging and radiculopathy; bilateral shoulder tears, status-post left shoulder repair; temporomandibular joint disorder ('TMJ' or 'TMD'); hypertension; and obesity" (Tr. 14) and that his non-severe impairments are diabetes, "moderate bilateral carpal tunnel syndrome ('CTS') and motor sensory polyneuropathy," "visual disturbances . . . and blurry vision," cholelithiasis, "sensorineural hearing loss," "adjustment disorder with PTSD features," and anxiety (Tr. 14-15). The ALJ found that

2

despite these impairments plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work.[1] A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who has this RFC, could perform certain unskilled jobs as an inspector, assembler, or packer (Tr. 67). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could perform and determined that he is not disabled (Tr. 24).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because his

---

[1] 20 C.F.R. § 404.1567(a) defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ found that plaintiff can perform sedentary work

> except lifting would be limited to no more than 15 pounds maximum; no exposure to hazards including work at unprotected heights or dangerous moving machinery; no climbing of any ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs; no more than occasional stooping, kneeling, or crouching; no crawling or balancing; no driving in the course of employment; no concentrated exposure to dust, fumes, odors, humidity, or wetness; no exposure to temperature extremes; no concentrated exposure to vibration or loud noise; preclude all reaching above shoulder level; and he requires a sit/stand option allowing the claimant to perform work in either a sitting or standing position and allowing for a change of position every 30 minutes or so.

(Tr. 18).

RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff is capable of performing.

Plaintiff's RFC evaluation is flawed for the following reasons. First, the ALJ failed to consider the side effects of plaintiff's medications. The record indicates that plaintiff takes, or at various times has taken, a number of medications, including Azor (Amlodipine-Olmesartan), Flexeril (Cyclobenzaprine), Norco (Hydrocodone), Nortriptyline, Diclofenac, Gabapentin, Omeprazole, Tramadol, Xanax, Amitiza, Benicar, Fioricet, Cambia, Oxycodone, Neurontin, and Janumet XR (Tr. 160, 180, 187, 207, 217, 263, 568, 570, 575-78, 930, 934-35, 989, 1305, 2061, 2087, 2103-2111, 2113-18, 2844, 2849, 2855, 2894, 2912, 2945-47), some of which have known side effects. On his function and disability reports, plaintiff indicated that some of his medications cause dizziness, lightheadedness, and drowsiness (Tr. 180, 187). Plaintiff also reported to his neurologist that some of his medications cause him to experience drowsiness (Tr. 929).

The ALJ's failure to make any findings as to this issue (or to make any inquiry at the hearing at which plaintiff appeared pro se) is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the

4

relevant time period; make findings as to the nature and severity of these medications' side effects, if any; and adjust his RFC evaluation of plaintiff and his hypothetical question(s) to the VE, as appropriate.

Second, the RFC evaluation is flawed because the ALJ neglected to make required findings concerning the effect, if any, of plaintiff's obesity on his other impairments. The ALJ found that obesity is one of plaintiff's severe impairments[2] (Tr. 14) and that his obesity "does not meet or medically equal any listing, singly or in combination with the other impairments" (Tr. 18). This was error because the regulations require ALJs to consider the effects of a claimant's obesity at *all steps* of the sequential evaluation process, not just "step three." *See* SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q ("when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."). On remand, the ALJ must make findings as to the effect, if any, of plaintiff's obesity on his other impairments. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates his back pain and/or diminishes his ability to sit, stand, or walk. The ALJ must include any such findings in reevaluating plaintiff's RFC and, as appropriate, in framing revised hypothetical question(s) to the VE.

---

[2] Under defendant's regulations, a person with a body-mass index ("BMI") of 30 or higher is considered to be obese, and a person with a BMI of 40 or higher is considered to be extremely so. *See* SSR 02-1p. The record indicates that plaintiff's BMI has fluctuated between 36 (Tr. 1509) and 40 (Tr. 271, 273, 288).

Third, the RFC evaluation is flawed because the ALJ unjustifiably minimized the significance of the numbness plaintiff experiences in his fingers. The ALJ found these symptoms to be non-severe (Tr. 14) and therefore did not include them in his RFC assessment. However, plaintiff's neurologist, Dr. Nilofer Nisar, MD, reported in June 2016 that plaintiff "previously had tingling and numbness of the fourth and fifth fingers bilaterally even prior to the [April 2016 left rotator cuff] surgery, but now has tingling and numbness of the thumb and index also especially in the left hand. Patient is left-handed" (Tr. 2969). Upon EMG testing, Dr. Nisar found "electrodiagnostic evidence of moderate intensity carpal tunnel syndrome and motor-sensory neuropathy at both wrists" as well as "electrodiagnostic evidence of C5-C6 radiculopathy involving left upper extremity and C7-C8 radiculopathy involving right upper extremity" (Tr. 2969). In August 2017, Dr. Nisar confirmed these EMG results and reported that plaintiff now "has almost permanent numbness in the third, fourth and fifth fingers bilaterally" (Tr. 2963).

In light of this evidence, plaintiff's numbness cannot be characterized as a non-severe impairment, i.e., one that is "totally groundless from a medical perspective," *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988), or one that constitutes a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Obviously, permanent numbness in six fingers is an impairment that could affect, if not preclude, plaintiff's ability to perform the jobs identified by the VE, or indeed any jobs involving the use of one's hands. On remand, the ALJ must make findings as to the severity of the numbness plaintiff experiences in his fingers and incorporate these findings in a revised RFC assessment and revised hypothetical question(s) to the VE.

Fourth, and similarly, the RFC assessment in this matter is flawed because the ALJ neglected to make findings regarding plaintiff's headaches, which are one of the impairments plaintiff claims to be disabling (Tr. 158). In fact, plaintiff testified that his neck pain and headaches are his main medical problems (Tr. 55). On his disability report, plaintiff indicated that he has "head aches every day and the pain is sometimes unbearable" (Tr. 189). The ALJ noted this testimony (Tr. 19) as well as the fact that headaches are among the symptoms plaintiff has complained about since his rollover accident in December 2014 (Tr. 19). The ALJ also noted that plaintiff has complained of headaches to his treating physician (Tr. 19) and his neurologist (Tr. 20), and that he sought emergency room treatment for headaches on one occasion (Tr. 22). Nonetheless, the ALJ made no findings as to whether plaintiff's headaches are severe or non-severe, or how often the headaches occur or how severe they are. Oddly, the ALJ did find that plaintiff should not be exposed to "dust, fumes, odors, humidity, or wetness [or] . . . temperature extremes" so as to "reduce the potential of pain or headaches being triggered by climate change" (Tr. 21), although there is no evidence in the record of which the Court is aware to suggest that plaintiff's headaches have anything to do with such environmental factors. Rather, the evidence seems to indicate that plaintiff's headaches, which his neurologists have diagnosed as "posttraumatic headache" (e.g., Tr. 2946, 2947, 2949), are related to his TMJ and cervical pain (Tr. 548, 2948). On remand, the ALJ must reevaluate the evidence regarding plaintiff's headaches, determine whether they are a severe or non-severe impairment, make findings as to their frequency and severity, and revise his RFC assessment and hypothetical question(s) to the VE, as appropriate.

Fifth, the RFC evaluation in this matter is flawed because the ALJ neglected to make any findings as to whether plaintiff's frequent medical appointments prevent him (or prevented him

7

during any consecutive twelve-month period) from working on a full-time basis. As this Court has previously stated, the ALJ must consider such "absenteeism" in evaluating a claimant's RFC:

> According to Social Security Ruling 96-8p, an ALJ assesses a claimant's residual functional capacity ("RFC"), or the claimant's ability to perform "sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." In making this determination, the Commissioner must take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded. *See Harrison v. Comm'r of Soc. Sec.*, No. 14-CV-11983, 2016 U.S. Dist. LEXIS 23491, at *19-20, 2016 WL 759379 (E.D. Mich. Feb 26, 2016); *Hartman v. Colvin*, 954 F. Supp. 2d 618, 626 (W.D. Ky. 2013); *Robinson v. Astrue*, No. 1:10-CV-689, 2011 U.S. Dist. LEXIS 144546, at *17-18, 2011 WL 6217436 (S.D. Ohio Dec. 14, 2011).

*Griffin v. Comm'r of Soc. Sec.*, No. 2:15-CV-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017). *See also Reed-Barnes v. Comm'r of Soc. Sec.*, No. 2:17-CV-12313, 2018 WL 1586486, at *4 (E.D. Mich. Apr. 2, 2018) (remanding for further proceedings because the ALJ neglected to make findings as to whether plaintiff's multiple hospitalizations "show a level of absenteeism that would prevent plaintiff from maintaining full time employment"); *Sampson v. Comm'r of Soc. Sec.*, No. 16-CV-14362, 2017 WL 5054271, at *2 (E.D. Mich. July 14, 2017) (remanding for further proceedings because the ALJ neglected "to consider whether plaintiff was employable during the 22-month period in question . . . due to the amount of time he spent in the hospital, at home recuperating after his hospital stays, and engaging in cardiac rehabilitation").

In the present case, the record reveals that following his rollover accident in December 2014 plaintiff spent a great deal of time attending appointments with various physicians,

physical therapists, and others for treatment, evaluation, and testing. In 2015, he had appointments with physicians at Spine Specialists of Michigan for evaluation and treatment of his neck, shoulder, and back pain on twenty-one occasions,[3] with the physical therapist associated with that clinic on 105 occasions,[4] with his treating physician on seven occasions,[5] with a TMJ specialist at the Michigan Head and Neck Institute for evaluation and treatment of his jaw and ear pain on thirty occasions,[6] and for CTs and MRIs of his spine, shoulders, pelvis, and brain on seven occasions.[7] He also went to the emergency room once, on May 24, complaining of headache (Tr. 2844-45).

In 2016, plaintiff had appointments with physicians at Spine Specialists of Michigan

---

[3] These appointments took place on January 8 and 26 (Tr. 1869-74), February 3 (Tr. 1875-76), March 17 and 31 (Tr. 1877-78, 1920-25), May 6 and 18 (Tr. 290, 268-70), June 3, 11, 17, and 25 (Tr. 271-72, 297, 307, 317), July 15, 21, and 26, and 30 (Tr. 320, 273-75, 1970, 276-77), August 5 and 19 (Tr. 327, 278-79), September 30 (Tr. 280-81), October 29 (Tr. 282-83), November 10 (Tr. 284-85), and December 22 (Tr. 286-87).

[4] These appointments took place on Jan. 19 (Tr. 334-35), February 16, 18, 19, 23, 24, and 26 (Tr. 1520-38), March 2, 4, 5, 9, 10, 12, 18, 19, 23, 25, 26, and 30 (Tr. 1539-67), April 6, 8, 14, 15, 20, 22, 23, 27, 28, and 29 (Tr. 1568-87), May 4, 5, 11, 13, 14, 20, 21, and 28 (Tr. 336-51), June 2, 4, 8, 9, 15, 16, 22, 23, and 30 (Tr. 352-67, 1608-09), July 1, 2, 6, 9, 13, 14, 20, 23, 27, and 28 (Tr. 368-87), August 3, 4, 11, 13, 18, 20, 24, 25, 27, and 31 (Tr. 388-410), September 1, 3, 8, 14, 15, 17, 23, 24, 28, and 29 (Tr. 411-30), October 1, 5, 7, 8, 12, 13, 15, 19, and 27 (Tr. 431-49), November 2, 3, 5, 9, 16, 17, 19, 23, 24, and 30 (Tr. 450-74), and December 3, 8, 10, 14, 16, 17, 21, 23, 29, and 30 (475-94).

[5] These appointments took place on April 9 and 17 (Tr. 2849-58), May 29 (Tr. 2903-07), June 5 (Tr. 2908-11), August 13 (Tr. 2922-26), September 1 (Tr. 2927-31), and October 9 (Tr. 2932-36).

[6] These appointments took place on June 1, 5, 10, 12, 19, 24, and 26 (Tr. 544-51, 553, 831-41, 903-24), July 1, 7, 8, 10, 17, 22, 24, 29, and 31 (Tr. 552, 556, 829-30, 888-902, 1326), August 7, 12, 14, 19, and 26 (Tr. 554, 557, 826-28, 879-87), September 2, 9, and 16 (Tr. 559, 825, 874-77, 878, 1322), October 14, 21, and 28 (Tr. 560-62, 822-24, 862-63, 868-72), November 4 and 11 (Tr. 563, 820-21, 854-55, 858-59), and December 9 (Tr. 564, 819, 850-52).

[7] These scans took place on January 29 and 30 (Tr. 2044-47, 2048-49), March 27 and 30 (Tr. 957-58, 2054-55), May 25 (Tr. 2842), and June 5 and 8 (Tr. 542-43, 2056-57).

for evaluation and treatment of his neck, shoulder, and back pain on eight occasions,[8] with the physical therapist associated with that clinic on sixty-eight occasions,[9] with his treating physician on four occasions,[10] with a TMJ specialist at the Michigan Head and Neck Institute for evaluation and treatment of his jaw and ear pain on ten occasions,[11] with neurologists for evaluation and treatment of his headaches and dizziness on nine occasions,[12] with a cardiologist for evaluation and treatment of his chest pain on five occasions,[13] for psychological evaluations on four occasions,[14]

---

[8] These appointments took place on February 1 (Tr. 288-89), March 24 (Tr. 1900-02), April 6 and 25 (Tr. 1903-07), May 26 (Tr. 1908-09), June 28 (Tr. 1854-63), July 11 (Tr. 1910-11), and August 22 (Tr. 1912-13).

[9] These appointments took place on January 5, 6, 7, 11, 12, 18, 19, 21, 25, 26, and 28 (Tr. 495-515), February 4, 8, 9, 11, 15, 18, 22, 23, and 25 (Tr. 516-37), March 1, 7, 8, 10, 17, 21, 22, 28, 29, and 31 (Tr. 538-41, 1798-1810), April 4 and 7 (Tr. 1811-14), May 31 (Tr. 1815-17), June 2, 6, 7, 9, 14, 16, 20, 21, 23, 27, and 30 (Tr. 1818-37, 1993), July 5, 12, 18, 19, 21, 25, and 26 (Tr. 1995-2009), August 1, 2, 4, 8, 9, 11, 16, 18, 23, 25, 29, and 30 (Tr. 2010-2033), and September 1, 6, 8, 12, and 13 (Tr. 2034-43). In addition, plaintiff had physical therapy appointments with another PT clinic on September 15, October 13, and October 27 (Tr. 1983-84, 1986-90).

[10] These appointments took place on May 27 (Tr. 2917-21), June 7 (Tr. 2898-2902), August 16 (Tr. 2894-97), and October 11 (Tr. 2912-16).

[11] These appointments took place on January 14 (Tr. 565, 817, 846-49), February 17 (Tr. 567, 816, 842-43), March 16 and 29 (Tr. 1342-43), April 28 (Tr. 1341), June 1 (Tr. 1340), July 14 (Tr. 1339), September 6 (Tr. 1338), October 6 (Tr. 1337), and December 6 (Tr. 1336).

[12] These appointments took place on January 22 and 28 (Tr. 568, 934-39, 2954-58), February 5 and 26 (Tr. 570, 929-30, 950-53, 2952-54), April 29 (Tr. 2951-52), June 8 (Tr. 2086, 2949-51), August 11 and 22 (Tr. 2948-49, 2061-62), and November 10 (Tr. 2947-48).

[13] These appointments took place on February 24, 25, and 26 (Tr. 964-65, 980-84, 1002-03, 1282-83), March 31 (Tr. 1281), and April 3 (Tr. 1280).

[14] These appointments took place on February 2, 3, and 4 (Tr. 987-98) and May 12 (Tr. 1305-07).

and for EEG, cardiac, and hearing tests on four occasions.[15] Plaintiff also sought emergency room treatment twice, on August 13 (Tr. 2087) and November 3 (Tr. 1505-12), for right flank pain and coughing up blood.

In 2017, plaintiff's medical appointments were not as frequent but still frequent enough to raise concerns about whether they caused a level of absenteeism that may affect his employability. Plaintiff had appointments with physicians at Spine Specialists of Michigan for evaluation and treatment of his neck, shoulder, and back pain on five occasions,[16] with his treating physician on one occasion,[17] with a TMJ specialist at the Michigan Head and Neck Institute for evaluation and treatment of his jaw and ear pain on thirteen occasions,[18] with a neurologist on one occasion,[19] and once for an MRI of his cervical spine.[20]

On remand, the ALJ must make findings regarding the frequency of plaintiff's absenteeism due to these appointments (and any others the Court may have overlooked) and incorporate these findings in revised hypothetical question(s) to the VE to determine whether work exists in significant numbers that a person with plaintiff's RFC and absenteeism due to medical

---

[15] These tests took place on February 5 (Tr. 2972), March 15 and 22 (Tr. 1292), and May 13 (Tr. 2112).

[16] These appointments took place on February 22 (Tr. 1914-16), June 27 (Tr. 1973-74), July 11 (Tr. 1975-76), August 9 (Tr. 1917-19), and September 20 (Tr. 2993-95).

[17] This appointment took place on January 19 (Tr. 2937-39).

[18] These appointments took place on February 14 (Tr. 1335), April 18 (Tr. 1334), June 8, 9, 14, 15, 19, 21, 26, and 28 (Tr. 1332-33, 1370-83), July 12 (Tr. 2073), August 14 (Tr. 3010), and September 19 (Tr. 3011).

[19] This appointment took place on July 20 (Tr. 2945-46).

[20] This appointment took place on August 16 (Tr. 2996-97).

11

appointments could perform.

Finally, the RFC evaluation in this matter is flawed because the ALJ did not give sufficient weight to the restrictions imposed by plaintiff's treating physician at the Spine Specialists of Michigan. From March 2015 until October 2016, Dr. Radden repeatedly indicated not only that plaintiff could not work but that he needed *attendant care* for six to sixteen hours per day, seven days per week (Tr. 2123, 581, 583, 585, 587, 591, 589, 593, 595, 2141, 2145, 2143, 2147, 2149, 2151). The ALJ appears not to have noticed this restriction, as he commented only on Dr. Radden's opinion that plaintiff "requires transportation services or replacement services, among other things" (Tr. 22). The ALJ proceeded to reject Dr. Radden's opinion that plaintiff cannot work because this issue "is within the special purview of the Commissioner of Social Security," his opinions "appear to be offered in relation to auto insurance related benefits," and because "the overall record is not consistent with disabling physical impairments . . . " (Tr. 22-23).

While the Commissioner is charged with deciding whether a claimant is disabled, an ALJ is not free to reject a treating physician's opinion regarding the extent of a patient's limitations with a glib remark that the opinion is inconsistent with the "overall record." As explained above, the ALJ in this case neglected to consider, or unfairly minimized, a number of plaintiff's impairments. Moreover, it is not clear that the ALJ understood that for a nineteen-month period Dr. Radden prescribed attendant care, meaning he believed plaintiff needed assistance doing such basic things as dressing, bathing, and cooking (*see, e.g.,* Tr. 2123). On remand, the ALJ must reevaluate Dr. Radden's restrictions based on a fair consideration of the entire record and, as appropriate, revise his RFC assessment and his hypothetical question(s) to the VE.

For the reasons stated above, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded to defendant for further proceedings as required above. This is a sentence four remand under § 405(g).

|  |  |
|---|---|
| Dated: May 15, 2019<br>Detroit, Michigan | s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE |

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 15, 2019.

| | |
|---|---|
| Sean Lamar Smith, Sr.<br>14170 Garfield<br>Redford, MI 48239 | s/Johnetta M. Curry-Williams<br>Case Manager |